**Opinion filed January 26, 2023**



## In The

# Eleventh Court of Appeals

_____

## No. 11-18-00037-CR

_____

## MICKEY RAY PERKINS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR24903**

### M E M O R A N D U M   O P I N I O N   O N   R E M A N D

A jury convicted Mickey Ray Perkins of aggravated assault involving family violence, a first-degree felony offense. *See* TEX. PENAL CODE ANN. § 22.02(b)(1) (West Supp. 2020). The jury assessed his punishment at confinement for a term of twenty-seven years in the Institutional Division of the Texas Department of Criminal Justice and a fine of $5,000.

In 2020, we affirmed Appellant's conviction and sentence. *Perkins v. State*, No. 11-18-00037-CR, 2020 WL 976941, at \*6 (Tex. App.—Eastland Feb. 28, 2020, pet. granted) (mem. op., not designated for publication), *aff'd in part and remanded*, No. PD-0310-20, 2022 WL 4088529, at \*6 (Tex. Crim. App. Sept. 7, 2022). In so doing, we held that the trial court did not abuse its discretion when it allowed evidence of an unadjudicated extraneous offense in the guilt/innocence phase of Appellant's trial. *Id.* at \*3. Appellant petitioned the Court of Criminal Appeals for discretionary review asserting that, among other things, we "failed to conduct a proper review of the trial court's 403 decision." *Perkins*, 2022 WL 4088529, at \*4. The Court of Criminal Appeals affirmed our judgment in part but remanded the case for us to conduct "a proper review of the trial court's Rule 403 ruling." *Id.* at \*6.

We subsequently permitted the parties to file supplemental briefs with respect to the issue on remand. Following our review of the trial court's Rule 403 ruling, we conclude that the trial court did not abuse its discretion. We affirm the trial court's judgment.

*Background Facts*

On August 30, 2016, Lana Hyles met Appellant at Brownwood Regional Medical Center so he could drive her home following a medical procedure. Hyles testified that, instead of turning toward her home, Appellant continued straight down another road. Hyles testified that she questioned Appellant and demanded that he take her home. In response, Appellant "jammed" Hyles's head into the console, held her head down, and choked her. Hyles testified that she bit Appellant's finger, broke free, and exited the vehicle while it was still coming to a stop.

Carrol Weathermon saw the parked car and "saw blood in the air" as she drove by the incident. Weathermon testified that she then saw a woman, later identified as Hyles, "crumpled up on the ground" and a man, later identified as Appellant, standing over her. Weathermon testified that she called 9-1-1 and began honking

2

her horn, which caused Appellant to "grab[] a handful of [Hyles's] hair" and unsuccessfully attempt "to pull her to the car." Weathermon testified that Hyles "crawled" into the passenger's side of Weathermon's vehicle and that Weathermon drove Hyles back to the hospital because she was bleeding profusely. Hyles's injuries included a gash to her nose, which caused a permanent scar, and bruising to her face.

During cross-examination, Appellant's trial counsel questioned Hyles's rendition of the incident and sought to elicit testimony that Hyles, not Appellant, caused her own injuries by "slamming the truck into park [or reverse] while it was still moving." Trial counsel's questions also implied that the gash could have been caused by Hyles's glasses. In response, the State sought to introduce evidence of an extraneous assault involving a different victim, Sarah Rogers, that occurred approximately six months prior to the charged offense. The State asserted that the evidence was admissible to prove Appellant's intent and motive, to prove the absence of a mistake and lack of accident, and to rebut a defensive theory. *See* TEX. R. EVID. 404(a)(2)(A), (b); *Dabney v. State*, 492 S.W.3d 309, 317 (Tex. Crim. App. 2016). Appellant's trial counsel objected on Rule 403 grounds and offered to stipulate to the evidence. *See* TEX. R. EVID. 403. After a hearing, the trial court conducted a Rule 403 balancing test and admitted the evidence with a limiting instruction. *See id.*; *Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex. Crim. App. 1991) (op. on reh'g); *see also Rankin v. State*, 974 S.W.2d 707, 712 (Tex. Crim. App. 1996).

The State then called Rogers as a witness. Rogers testified that, approximately six months prior to the indicted offense, Appellant assaulted her when she woke him up following a night of drinking. Rogers testified that Appellant "forcefully" hit her in the head after she "wouldn't stop talking." Rogers testified that Appellant continued to hit her "wherever he could" until she lost consciousness. Rogers

3

testified that the assault ended when he "dragged [her] from the bedroom by the head of [her] hair" into the living room. Rogers testified that she was taken to the hospital after calling 9-1-1. Rogers testified that she sustained head injuries, bruising to her neck and eyes, and fractured ribs from the incident.

*Analysis*

The sole issue on remand is whether, under Rule 403, the trial court abused its discretion in admitting the extraneous offense evidence.

*Standard of Review*

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). When reviewing a trial court's determination under Rule 403, we reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting *Montgomery*, 810 S.W.2d at 392). An abuse of discretion occurs when the trial court's decision falls outside the zone of reasonable disagreement. *Montgomery*, 810 S.W.2d at 391.

*Admissibility of Extraneous Offense Evidence*

Extraneous-offense evidence is generally admissible if (1) it is relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character,[1] and (2) the probative value of the evidence is not substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. *See* TEX. R. EVID. 401, 403, 404(b); *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005); *see also De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). If the extraneous evidence satisfies this two-prong test,

---

[1] As noted by the Texas Court of Criminal Appeals in its opinion remanding this matter to us: "Extraneous-offense evidence is generally admissible if the evidence is relevant to a fact of consequence apart from its tendency to prove character conformity." *Perkins*, 2022 WL 4088529, at *5.

a trial court's ruling is generally within the zone of reasonable disagreement. *De La Paz*, 279 S.W.3d at 344.

Pursuant to Rule 401, evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." TEX. R. EVID. 401. Under Rule 404, relevant extraneous offense evidence may be admissible for noncharacter conformity purposes such as rebutting a defensive theory that negates an element of the charged offense or "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2); *De La Paz*, 279 S.W.3d at 343; *Martin*, 173 S.W.3d at 466. Rule 403 requires a trial court, prior to admitting any extraneous offense evidence, to conduct a balancing test to determine whether the "probative value [of the evidence] is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.

*Our Review of the Trial Court's Rule 403 Decision*

In our Rule 403 review, we "must measure the trial court's ruling against the relevant criteria by which a Rule 403 decision is to be made." *Montgomery*, 810 S.W.2d at 392. The Court of Criminal Appeals describes the relevant criteria as follows:

(1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

(2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way";

(3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; [and]

(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*Mozon*, 991 S.W.2d at 847; *see Perkins*, 2022 WL 4088529, at *6; *see also Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). We take each factor in turn.

First, we consider "how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable." *Mozon*, 991 S.W.2d at 847. We find that the extraneous evidence served to rebut Appellant's main defensive theory—that Hyles's injuries were self-inflicted. This evidence was compelling because of its similarity to the charged offense. Similarity existed in the manner Appellant assaulted both women and the injuries each woman sustained. Specifically, Appellant reacted violently in response to each woman talking to him, grabbed or held each woman by the neck, forcefully hit each woman in the head, dragged each woman by the hair, and caused head injuries and bruising to both women, which resulted in their hospitalization. The similar details of the extraneous assault and the charged offense tended to rebut Appellant's defensive theory that Hyles's injuries were self-inflicted. *See Perkins*, 2022 WL 4088529, at *7 (Yeary, J., concurring) (the details of the assault against Rogers were "relevant and strongly probative" to prove that Hyles's injuries were not self-inflicted).

Moreover, the extraneous assault tended to prove Appellant's intent and the absence of mistake or lack of accident in the charged offense. For example, in the instant offense, Appellant testified that Hyles put the car in "reverse or park," so he "hit the brakes . . . and she hit her face on the dash." Similarly, in the assault against Rogers, Appellant testified that he accidentally caused Rogers's injuries and that her head injury was caused by her head hitting the side table. Appellant also repeatedly contacted both women following the assaults in an effort to control the situation or

6

to explain his actions. Because evidence of the similar extraneous assault tended to (1) prove Appellant's intent and the absence of mistake or lack of accident and (2) disprove Appellant's defensive theory, we conclude that this factor weighs heavily in favor of admission.

Second, we consider "the potential the other offense evidence has to impress the jury 'in some irrational but nevertheless indelible way.'" *Montgomery*, 810 S.W.2d at 390; *see Mozon*, 991 S.W.2d at 847. We conclude that the evidence did not have the potential to impress the jury in an "indelible way" because the trial court implemented several safeguards regarding the admission and presentation of the extraneous offense evidence. For example, the trial court provided a detailed limiting instruction prior to the admission of Rogers's testimony, and it further included the instruction, in addition to other limiting instructions, in the trial court's charge. Moreover, the arguments of counsel assisted in reducing any possible juror confusion. During closing arguments, the State explained the purpose of the extraneous evidence, and the State and Appellant's trial counsel directed the jury to focus on determining Appellant's guilt or innocence for the indicted offense. We conclude that this factor weighs in favor of admission. *See Perkins*, 2022 WL 4088529, at *7 (Yeary, J., concurring) ("[T]o the extent that this relevant evidence may have caused Appellant some prejudice, it was very unlikely to be the kind of 'unfair prejudice' contemplated by Rule 403.").

Third, we consider "the time the proponent . . . need[ed] to develop the evidence." *Mozon*, 991 S.W.2d at 847. As noted by the Court of Criminal Appeals, the "second day of Appellant's two-day trial was devoted in large part to extraneous offense testimony," which consisted of "three witnesses over approximately 40 transcript pages related to Rogers's testimony." *Perkins*, 2022 WL 4088529, at *2. We note that the trial court excused one of the State's main witnesses for the indicted offense, shortening the trial overall, after that witness became ill. We further note

7

that the State might have needed to present some rebuttal evidence regarding Rogers following Appellant's testimony to address any credibility issues and inconsistencies. However, considering the amount of time dedicated to the Rogers evidence overall, we conclude that this factor weighs in favor of exclusion.

Fourth, we consider "the force of the proponent's need for this evidence to prove a fact of consequence." *Mozon*, 991 S.W.2d at 847. Under this factor, we consider whether the State had additional evidence to prove the fact of consequence at issue, the strength of such evidence, and whether the fact of consequence was actually in dispute. *Montgomery*, 810 S.W.2d at 390. Here, as stated above, three facts of consequence were in dispute: (1) Appellant's intent; (2) whether Hyles's injuries were caused by mistake or accident; and (3) whether Hyles's injuries were self-inflicted. The State presented Hyles's testimony, a 9-1-1 telephone call made by Weathermon, photographs of Hyles's injuries, and photographs of Hyles's vehicle in an attempt to substantiate each fact of consequence. However, Hyles had difficulty remembering some of the details of the assault, and the only eyewitness to the incident did not observe the cause of Hyles's injuries. Moreover, Appellant's trial counsel indicated that the evidence on such facts was weak and that the State's witnesses were not credible. In this particular case, the State needed the extraneous evidence to prove Appellant's intent, to prove the absence of mistake or lack of accident, and to rebut Appellant's defensive theory that Hyles's injuries were self-inflicted. We conclude that this factor weighs in favor of admission.

Following our review of the Rule 403 factors, we conclude that the compelling nature of the probative evidence, the State's need for the evidence, and the safeguards implemented by the trial court each support the trial court's ruling under Rule 403. *See* TEX. R. EVID. 403; *see also State v. Mechler*, 153 S.W.3d 435, 442 (Tex. Crim. App. 2005) (finding that the "sum of the factors weigh in favor of admissibility"); *Render v. State*, 347 S.W.3d 905, 921–22 (Tex. App.—Eastland

8

2011, pet. ref'd) (trial court did not abuse discretion where extraneous assault was similar to the charged offense, the trial court gave a limiting instruction, and the State needed to present evidence to rebut defensive theory). We further conclude that the extraneous offense evidence was relevant to a fact of consequence apart from character conformity and that the probative value of the evidence was not substantially outweighed by any unfair prejudice. *See De La Paz*, 279 S.W.3d at 344. Accordingly, we hold that the trial court's decision to admit the extraneous offense evidence does not fall outside of the zone of reasonable disagreement. *Montgomery*, 810 S.W.2d at 391. The trial court did not abuse its discretion when it admitted such evidence. Therefore, we overrule the sole issue before us on remand.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


January 26, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.